IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

v.                                        Case No. 1:22-cr-10272 IT

JALONNI TUCKER, a/k/a
    JALONI SHABAZZ,
         Defendant.

DEFENDANT'S SENTENCING MEMORANDUM
Preliminary

Jalonni Shabazz, defendant, by his counsel, Kevin L. Barron, Esq., respectfully offers the Honorable Court this memorandum in connection with defendant's December 6, 2023 sentencing hearing. The PSR finds TOL 19/CHC VI, GSR 63 – 78 months for this unarmed bank robbery (passing a note). PSR ¶¶28, 44 & 85. Defendant has an appalling childhood social history and major mental illness. This bank robbery is a repeat offense. 1:16-cr-10304 LTS (54 months' incarceration).

The question at sentencing is whether a sentence with continuing treatment or with more incarceration better serves the purposes of the Sentencing Reform Act. Defendant recommends the former and refers the Court to the sealed July 10, 2023 evaluation of Robert Welch, MD.

Defendant requests a 42-month sentence for this offense and six-month supervised release revocation. A minimal

incarcerative sentence of time served with successive terms of supervised release may be warranted to promote defendant's mental health.

## FACTS

A.   Defendant's Extraordinary Disadvantaged Social History

Mr. Shabazz is courteous, personable and well-spoken. Meeting him, it is hard to imagine the frightening circumstances of his upbringing.  Defendant's mother was addicted to cocaine base at his birth.  Defendant was born into DCF custody and spent early childhood in 24 foster homes.  PSR ¶50.  At age four in DCF custody, two older half brothers sexually abused him for a year.  Defendant was again sexually abused by two different perpetrators at age five and six.  After reunification, his mother would beat him with belts and extension cords in frequent fits of rage and he went into DCF custody again.  *Id.*  Defendant was placed for pre adoption at about age 12 and given up.  One of his biological brothers was killed in a fire at one of their foster homes, and his best friend as a teenager was murdered. For a more complete description of defendant's early life, see Defendant's Memorandum in Aid of Sentencing, Case 1:16-cr-10304 LTS, Doc. 42, pp. 2 - 9.

B.   Defendant Maintains Enduring Relationships

Despite this history, defendant has maintained two long-term family relationships. He is close to his mother and to his ex-wife. His mother now reports 31 years of sobriety, "which has allowed her and the defendant to have a positive and supportive relationship." PSR ¶50. Despite their recent divorce, Mr. Shabazz has kept up his friendship with his ex-wife and her five children from previous relationships. PSR ¶58 & Sealed Exhibit. Mr. Shabazz has paid a positive co-parenting role in the upbringing of the children. Mr. Shabazz has also maintained his friendship with Roderick Kampf, who again writes in his support. Ex. A.

C.   Previously Underreported Mental Illnesses

Mr. Shabazz has two long-standing, serious mental illnesses that were not addressed at his July 18, 2019 sentencing, bi-polar disorder and major depression. The argument at defendant's July 2017 sentencing centered around drug treatment. No psychiatric evaluation appears to have been offered or conducted. Bipolar and Major Depressive disorders were mentioned as early life diagnoses (age 16) in the "Mental Health" section of the previous PSR, but do not appear to have been a subject in issue at sentencing. See, PSR ¶83 July 11,

2017; Tr. July 18, 2017 sentencing hearing, 1:16-cr-10304 LTS; PSR this case ¶61.

Defendant's principal arguments at sentencing concerned offenses committed to feed a substance use disorder and the need for substance use treatment.  The parties and the court did not address major mental illness.  There was an involved colloquy over the government's assertion that defendant had had many "opportunities" for treatment in past state custody and the court challenged that assertion as unlikely.  Tr. 9 - 12.  The defense argued that defendant had had relatively few drug treatment opportunities in the past, mentioning Bridge House and a halfway house in Framingham with short periods of sobriety. The defense argued that federal supervised release would offer more intensive treatment (Tr. 21) and that the court should make a judicial recommendation for RDAP (Tr. 23).  The court expressed concerns about the availability of RDAP depending on the results of defendant's related state parole and counsel's responses stressed the importance of substance abuse recovery. Tr. 24-26.

D.   Mild Offense Conduct

Defendant was suffering a manic episode and relapse at the time of the offense.  Boston Medical Center records show that defendant presented at the emergency room for treatment and

requesting medication.  Defendant was screened but reports that he was agitated and ejected from the ER.

It would be difficult to imagine a bank robbery that involved a lesser degree of force and still satisfied the elements to sustain a conviction.  As in his last conviction, defendant passed a note.  All the surveillance videos in discovery show defendant did nothing to intimidate or excite fear.  Masked during COVID, he went to the deposit slip table, presumably to write the note.  On his way to the teller, defendant bumped into a large concrete support pillar in the center of the lobby.  He reached the counter and quietly passed the teller a note, returned a GPS pack, took the remaining money and walked from the counter.  Defendant's partially-covered face showed no signs of stress or aggravation.  All the several video surveillance files showed no threatening or abnormal behavior.

After the robbery, Mr. Shabazz learned from his ex-wife on about May 26 2022 that US Marshals were searching for him.  Shabazz called USMS and received a call back from USDM Gerrard Mendez.  Shabazz offered to report to the Marshals and USDM Mendez told him he had to be picked up.  Shabazz gave the location (811 Mass Ave) and USMS came and arrested him.

E.   Role in Offense of Defendant's Disorders

Contrary to the gravamen of prior counsel's argument at the August 2017 sentencing hearing, the defense maintains that defendant's history of offense conduct is largely the product of his principal underlying mental illness, not drug use.  While bipolar disorder and cocaine abuse are interconnected (Dr. Welch's report, discussed *infra*), the bipolar diagnosis dates to age 16, making it highly unlikely that cocaine use caused the disorder.

The PSR notes that Mr. Shabazz had substance abuse treatment during his last supervised release.  The PSR lists "Adcare Detox Center in Worcester, MA, Dimmock Detox Center in Roxbury, MA, Hope House in Roxbury, MA, and Spectrum Health in Westborough, MA."  PSR ¶69  It also notes five months of successful recovery in this District's CARE program.  PSR ¶70.

If Mr. Shabazz has relapsed repeatedly, it probably indicates that bipolar disorder – always episodic in nature – has not been treated with sufficient emphasis.  Although Mr. Shabazz was born addicted to cocaine in utero, the core problem is the long-standing mental illness.

Dr. Welch concludes that defendant has a "good prognosis for continued recovery and sobriety with appropriate support and resources".  Sealed Exhibit, p. 7.  Dr. Welch emphasizes that

bipolar disorder and substance abuse are both relapsing conditions and that the best practice is to "maximize treatment and support for recovery in all domains". *Id.,* p. 6.  Dr. Welch offers a medical opinion that if defendant can be "re stabilized" on a therapeutic dose of his valporic acid and maintain a sufficient blood serum level, he can avoid the types of episodes that lead to relapse.  As the report concludes:

> I believe that he would benefit from treatment in a dual diagnosis residential treatment setting (such as Hope House, or an equivalent program), where significant attention could be given to both his psychiatric and substance abuse recovery needs. Ongoing psychiatric care, including effective medication management with mood stabilizers (such as []) and support for sobriety and recovery (such as individual and group addictions treatment and supervised urine toxic screens to support and confirm sobriety) would be helpful parts of the treatment regime.

*Id.,* p. 6.

## ARGUMENT

Counsel recommends sentences of 42 and 6 months with hesitancy, not because it is lower than the last sentence but because the recommendation is for criminal incarceration at all. This case exemplifies the poor coordination of mental health and criminal justice.  Defendant has moved from a calamity in a failed child protective system to incarceration in the absence of prompt and comprehensive mental health care.

The rationale of increasing punishment for continued offense conduct cannot apply to this case.[1]  If Mr. Shabazz were a sexual perpetrator or guilty of gravely violent conduct, the importance of protecting the public might predominate this Court's weighing of Sec. 3553(a) factors.  Sec. 3553(a)(2)(C).  Here, however, punishment will not provide "deterrence" against improperly or inadequately treated, poorly controlled manic episodes that end in cocaine use and reoffense.  3553 (a)(2)(B).  In the same light, it is difficult to conceive of just punishment for the product of inadequately treated mental illness.  Rather, the predominant consideration – not just for the defendant's health but for protection of the public and promoting respect for the law – should be "medical care".  3553(a)(2)(D).

Defendant need not recite at length the proposition that a correctly calculated Guidelines Sentence Range may not be presumed reasonable.  *Nelson v. United States,* 555 US 350 (2009).  Continued incarceration of an episodic and poorly controlled mental illness is not reasonable for a defendant who does not present any acute danger.  Treatment for this constellation of disorders and social history will be prone to

---

[1] In fact, the Guidelines do not recommend increased punishment here. Defendant's current TOL of 19 is two levels lower than the last offense, essentially the same only because there was one robbery to score in this case.

breakdowns, but that does not warrant repeated incarceration for this defendant.  Episodes of severe mental illness will be an enduring problem; they can be minimized with careful attention to blood medication levels and in facility treatment.

Prolonged incarceration, if the Court were to impose it, would not likely advance defendant's mental health and the underlying cause of recidivism.  Supervised release imposing mental health conditions as before, with its ability to detain defendant when necessary are preferable to prison.

## CONCLUSION

For the reasons set forth above, the Court should impose sentence with reduced or minimal incarceration as discussed above.

Dated:  November 29, 2023         Respectfully submitted,
                                  JALONI SHABAZZ, defendant,
                                  By his counsel,
                                  /s/Kevin L. Barron
                                  Kevin L. Barron, Esq.
                                  P.O. Box 290533
                                  Boston, MA 02129
                                  (617) 407-6837

## CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this motion to be served today through the CM/ECF system of this District on the attorneys for all the parties as set forth in the Notice of Electronic Filing and that no party requires service by other means.

/s/Kevin L. Barron